**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

STATE OF RHODE ISLAND, by and
through PETER F. NERONHA, ATTORNEY
GENERAL,

     *Plaintiff*,

            v.

CAREMARKPCS HEALTH, L.L.C., ZINC
HEALTH SERVICES, LLC, EXPRESS
SCRIPTS, INC., ASCENT HEALTH
SERVICES LLC, OPTUMRX INC., AND
EMISAR PHARMA SERVICES LLC,

     *Defendants.*

Case No. 1:25-cv-00306

**PLAINTIFF THE STATE OF RHODE ISLAND'S MEMORANDUM
IN OPPOSITION TO DEFENDANT EMISAR PHARMA SERVICES LLC'S
12(b)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

**TABLE OF CONTENTS**

**INTRODUCTION**......................................................................................................... 1

**WELL-PLEADED JURISDICTIONAL FACTS**......................................................... 2

**LEGAL STANDARD**.................................................................................................... 3

**ARGUMENT**................................................................................................................. 5

    A.    The State's Allegations Relate to Emisar's Conduct That Directly Impacts

         Rhode Island ............................................................................................................. 5

    B.    Emisar Has Purposefully Availed Itself of the Privilege of Doing Business in

         Rhode Island ............................................................................................................. 6

    C.    Exercising Jurisdiction Over Emisar Is Reasonable .......................................... 12

    D.    In the Alternative, the Court Should Permit the State to Conduct Jurisdictional

         Discovery ................................................................................................................. 14

**CONCLUSION** ............................................................................................................ 15

i

# TABLE OF AUTHORITIES

**Cases**

*Adelson v. Hananel*,
    652 F.3d 75 (1st Cir. 2011) ................................................................................................ 5

*Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*,
    480 U.S. 102 (1987) ......................................................................................................... 13

*Astro-Med, Inc. v. Nihon Kohden Am., Inc.*,
    591 F.3d 1 (1st Cir. 2009) .................................................................................................. 3

*Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*,
    825 F.3d 28 (1st Cir. 2016) ......................................................................................... 4, 6, 8

*Blair v. City of Worcester*,
    522 F.3d 105 (1st Cir. 2008) ............................................................................................ 14

*Bristol-Myers Squibb Co. v. Super Ct. of Cal.*,
    582 U.S. 255 (2017) ........................................................................................................... 4

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) .................................................................................................. passim

*Carreras v. PMG Collins, LLC*,
    660 F.3d 549 (1st Cir. 2011) .............................................................................................. 6

*Chen v. United States Sports Academy, Inc.*,
    956 F.3d 45 (1st Cir. 2020) ...................................................................................... 3, 8, 10

*CW Downer & Co. v. Bioriginal Food & Science Corp.*,
    771 F.3d 59 (1st Cir. 2014) ...................................................................................... 7, 11, 13

*Daniels Agrosciences, LLC v. Ball DPF, LLC*,
    2013 U.S. Dist. LEXIS 134732 (D.R.I. Aug. 28, 2013) ..................................................... 5

*Dion v. Kiev*,
    566 F. Supp. 1387 (E.D. Pa. 1983) .................................................................................. 12

*Dynamic Concepts, Inc. v. Modern Chain Mfg. Co., Inc.*,
    610 F. Supp. 285 (D.R.I. 1985) .......................................................................................... 6

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    592 U.S. 351 (2021) ..................................................................................................... 4, 13

*Foster-Miller, Inc. v. Babcock & Wilcox Can.*,
  46 F.3d 138 (1st Cir. 1995) ................................................................................... 4

*Franks v. Coopersurgical, Inc.*,
  722 F. Supp. 3d 63 (D.R.I. 2024) ................................................................. passim

*Goodyear Dunlop Tires Operations, SA v. Brown*,
  564 U.S. 915 (2011) ............................................................................................. 5

*Hannon v. Beard*,
  524 F.3d 275 (1st Cir. 2008) ............................................................................... 6

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ............................................................................................. 4

*Knox v. MetalForming, Inc.*,
  914 F.3d 685 (1st Cir. 2019) .......................................................................7, 8, 11

*Long v. Dell, Inc.*,
  93 A.3d 988 (R.I. 2014) ..................................................................................... 10

*Madden v. Rittal North America, LLC*,
  643 F. Supp. 3d 305 (D.R.I. 2022) .................................................................... 13

*Nat'l Ass'n of Real Estate Appraisers v. Schaeffer, Bates & Co.*,
  1989 WL 267762 (C.D. Cal. Mar. 23, 1989) ..................................................... 12

*Northern Laminate Sales, Inc. v. Davis*,
  403 F.3d 14 (1st Cir. 2005) ............................................................................... 10

*Phillips v. Prairie Eye Ctr.*,
  530 F.3d 22 (1st Cir. 2008) ................................................................................. 8

*Plixer Int'l, Inc. v. Scrutinizer GmbH*,
  905 F.3d 1 (1st Cir. 2018) ..............................................................................7, 11

*PREP Tours, Inc. v. Am. Youth Soccer Org.*,
  913 F.3d 11 (1st Cir. 2019) ........................................................................... 4, 5, 8

*Rhode Island Hosp. Trust Nat. Bank v. San Gabriel Hydroelectric Partnership*,
  667 F. Supp. 66 (D.R.I. 1987) ........................................................................... 13

*Rodriguez v. Fullerton Tires Corp.*,
  115 F.3d 81 (1st Cir. 1997) ................................................................................. 3

iii

*Rodriguez-Rivera v. Allscripts Healthcare Sols., Inc.*,
   43 F.4th 150 (1st Cir. 2022) ........................................................................... passim

*Sunview Condominium Ass'n v. Flexel Intern., Ltd.*,
   116 F.3d 962 (1st Cir. 1997)..................................................................................... 14

*Surpitski v. Hughes-Keenan Corp.*,
   362 F.2d 254 (1st Cir. 1966) ..................................................................................... 14

*Ticketmaster-N.Y., Inc. v. Alioto*,
   26 F.3d 201 (1st Cir. 1994) ........................................................................... 12, 13, 14

*Travelers Health Assn. v. Virginia*,
   339 U.S. 643 (1950)..................................................................................................... 9

*U.S. v. Swiss Am. Bank, Ltd.*,
   274 F.3d 610 (1st Cir. 2001) ..................................................................................... 14

*Vapotherm, Inc. v. Santiago*,
   38 F.4th 252 (1st Cir. 2022)......................................................................................... 3

**Statutes**

R.I. Gen. Laws § 6-13.1-2............................................................................................... 6

R.I. Gen. Laws § 9-5-33.................................................................................................. 3

**INTRODUCTION**

As Defendant Emisar Pharma Services LLC ("Emisar") has the necessary minimum contacts with the State of Rhode Island under the Rhode Island long-arm statute, its Motion to Dismiss for Lack of Personal Jurisdiction ("Emisar Br."), ECF No. 33, should be denied. Emisar is a group purchasing organization ("GPO") established by Defendant OptumRx, Inc. ("OptumRx") in 2021. Compl. ¶¶ 24–25. A GPO, also called a rebate aggregator, consolidates the purchasing power of multiple companies by collecting health plan and pharmacy benefit management ("PBM") clients and negotiating rebate agreements with pharmaceutical drug manufacturers on behalf of all those clients at once. *Id.* at ¶ 15. The gravamen of the State of Rhode Island's ("the State's") complaint in this action is that the PBM Defendants and the GPO Defendants, including Emisar, engage in a scheme to artificially inflate prescription drug prices for their own financial gain and at the expense of Rhode Islanders in violation of Rhode Island's Deceptive Trade Practices Act statute.[1] *Id*. at ¶ 1.

Specifically, as alleged in this case, Emisar negotiates rebate agreements on behalf of OptumRx and enters the contracts governing these rebates with pharmaceutical manufacturers, including contracts with various prescription drug manufacturers related to payments for preferred placement on OptumRx's standard formularies under which Rhode Islanders get their medications. *Id*. at ¶¶ 24–25. In so doing, Emisar (and by extension, its PBM client) exerts leverage over pharmaceutical manufacturers during rebate agreement negotiations and extracts increased administrative fees, prescription drug rebates, and kickback fees that artificially increase a

---

[1] CaremarkPCS Health, L.L.C., Express Scripts, Inc., and OptumRx, Inc. will be referred to as the "PBM Defendants." Zinc Health Services, LLC, Ascent Health Services, LLC, and Emisar Pharma Services LLC will be referred to as the "GPO Defendants." The PBM Defendants and the GPO Defendants will be collectively referred to as "Defendants."

prescription drug's wholesale acquisition cost ("WAC"), also known as the "list price." *See id.* at ¶¶ 6–12, 224, 244. Moreover, GPOs like Emisar add another layer of non-transparency to the prescription drug pricing system and siphon unlawful payments that artificially increase consumers' out of pocket cost for their prescription medications. *Id.* at ¶¶ 224, 232, 242–44. The Complaint alleges that this conduct by Emisar violates Rhode Island's Deceptive Trade Practices Act, *see id.* at ¶¶ 3, 217–48, and that this conduct harms Rhode Islanders, *see id.* at ¶¶ 21, 217–48.

## WELL-PLEADED JURISDICTIONAL FACTS

Emisar is a GPO. *Id.* at ¶ 24. Emisar is incorporated in Delaware and has its principal place of business in Minnesota. *Id.*; Emisar Br. at 1. Like OptumRx, Emisar is a wholly owned indirect subsidiary of UnitedHealth Group. Compl. ¶¶ 23–24.

Emisar negotiates rebate agreements on behalf of OptumRx and enters the contracts governing these rebates with pharmaceutical manufacturers, including contracts with various prescription drug manufacturers related to payments for preferred placement on OptumRx's standard formularies used in Rhode Island. *Id.* at ¶¶ 24–25 & 43–44. As pled in the Complaint, Emisar "transact[s] business in Rhode Island" and "engage[s] in business in Rhode Island by administering pharmacy benefit services to Rhode Island consumers." *Id.* at ¶ 28. Emisar does this by creating and holding rebate contracts that drive up the prescription medication costs of Rhode Island consumers. *Id.* at ¶¶ 6, 28, 43–44, 136–38; *see id.* at ¶ 66 (alleging that Emisar "engag[es] in rebate and formulary negotiations with manufacturers [and] collect[s] payments from manufacturers and distribute[s] them to the PBM Defendants . . . nationwide, including, upon information and belief, in Rhode Island.").

The Complaint alleges specifically that, through these rebate practices, the PBM Defendants (including OptumRx) and their GPOs (including Emisar) have artificially inflated the

2

WAC of prescription drugs to the detriment of Rhode Islanders.  *Id*. at ¶¶ 36–40, 43–44, 66, 76, 89–92, 110–27, 179–80, 224–25, 232, 242–44; *see also* Emisar Br. at 1.  "[E]ach of the Defendants [including Emisar] manages prescription drug coverage for tens of millions of consumers, including thousands of Rhode Island residents."  Compl. ¶ 105.  Together with OptumRx, Emisar has created an opaque and layered system to control the drug rebate negotiations that artificially inflate Rhode Islanders' prescription drug prices.  *Id*. at ¶ 44.

These unlawful actions by Emisar in its rebate negotiations with drug manufacturers have had effects in Rhode Island and form a predicate for the State's claims.  *See id.* at ¶¶ 2–3, 50–54, 217–48.

## LEGAL STANDARD

Where, as here, subject matter jurisdiction is premised on diversity, a court evaluating personal jurisdiction "must determine whether the defendant's contacts with the state satisfy both the state's long-arm statute as well as the Due Process Clause of the Fourteenth Amendment."  *Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 258 (1st Cir. 2022).  R.I. Gen. Laws § 9-5-33, Rhode Island's long-arm statute, "is 'coextensive' with the Due Process Clause, meaning the Due Process analysis controls."  *Franks v. Coopersurgical, Inc.*, 722 F. Supp. 3d 63, 75 (D.R.I. 2024) (citing *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 8–9 (1st Cir. 2009)).

Though the State bears the burden of demonstrating that this Court has specific personal jurisdiction over Emisar, at this stage of the case, that burden is only a *prima facie* evidentiary standard – the "least taxing of these standards from a plaintiff's standpoint."  *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83–84 (1st Cir. 1997).  The State need only "proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction."  *Chen v. United States Sports Academy, Inc.*, 956 F.3d 45, 54 (1st Cir. 2020) (citing *Baskin-Robbins*

*Franchising LLC v. Alpenrose Dairy, Inc*., 825 F.3d 28, 34 (1st Cir. 2016)). Thus, under this standard, a court "acts not as a factfinder, but as a data collector" in determining whether the facts as alleged, "if credited, would support" that exercising specific personal jurisdiction over Emisar would comport with due process standards. *Id.* at 51 (relying on *Foster-Miller, Inc. v. Babcock & Wilcox Can*., 46 F.3d 138, 145–46 (1st Cir. 1995)).

To establish specific personal jurisdiction over Emisar, the State must show that Emisar "purposefully availed itself" of the privilege of doing business in Rhode Island and that the State's claims arose out of or relate to Emisar's contacts with the forum. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct*., 592 U.S. 351 (2021); *Bristol-Myers Squibb Co. v. Super Ct. of Cal*., 582 U.S. 255, 262 (2017) ("[T]here must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."). Courts in the First Circuit are guided by a three-part test in evaluating personal jurisdiction. *Franks*, 722 F. Supp. at 76.

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must . . . be reasonable.

*Id.* (citing *PREP Tours*, 913 F.3d at 18). A showing under each of those touchstones with respect to the claims at issue demonstrates that a defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *PREP Tours*, 913 F.3d at 17 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The State does not allege that Emisar is subject to general personal jurisdiction in Rhode Island. But it need not, because "specific or case-linked" jurisdiction that "depends on an affiliation between the forum and the … controversy" underlying the State's claims is precisely

reflected in these facts. *PREP Tours, Inc. v. Am. Youth Soccer Org.,* 913 F.3d 11, 17 (1st Cir. 2019) (citing *Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915, 919 (2011)).

## ARGUMENT

This Court has specific personal jurisdiction over Emisar.  First, the allegations against Emisar in the State's Complaint "arise out of or relate to" Emisar's services involving Rhode Island, which suffices to show a "demonstrable nexus" between Emisar's contacts in Rhode Island and the State's claims.  Second, Emisar purposefully availed itself of the privilege of conducting business in Rhode Island because it has voluntarily entered into contracts with drug manufacturers on behalf of OptumRx that help dictate the prescription drug prices that Rhode Islanders pay, thereby rendering the Court's jurisdiction over it for these actions foreseeable.  Lastly, exercising personal jurisdiction over Emisar for purposes of the State's claims is reasonable when analyzed alongside the applicable gestalt factors because Emisar's burden of appearance in Rhode Island does not suffice to outweigh the State's interest in litigating its claims against Emisar in Rhode Island.

### A. The State's Allegations Relate to Emisar's Conduct That Directly Impacts Rhode Island

The "flexible, relaxed standard" for assessing relatedness requires that there be only a "demonstrable nexus" between the complaint's claims and the activities in the forum that properly may be attributed to the defendants, such that "the litigation itself is founded directly on those activities."  *PREP Tours*, 983 F.3d at 17 (citing *Adelson v. Hananel*, 652 F.3d 75, 81 (1st Cir. 2011)); *Daniels Agrosciences, LLC v. Ball DPF, LLC*, 2013 U.S. Dist. LEXIS 134732, at *25 (D.R.I. Aug. 28, 2013) (explaining that "[t]o satisfy the relatedness prong, one or more of the elements of the cause of action must arise from or relate to the defendant's contacts with the forum state," and that relatedness is "a flexible, related standard").

5

Here, the Complaint is founded on Emisar's activities directly impacting Rhode Island. Emisar participates in the industry-wide scheme alleged in the Complaint by negotiating the very rebate agreements that artificially inflate the WAC of prescription drugs and, in turn, impact out-of-pocket costs and prescription drug access for Rhode Islanders.  Compl. ¶¶ 50–54, 128, 141. Emisar's rebate contracts are at the heart of the State's claims because the State alleges that these rebate negotiations and their resulting contracts violate Rhode Island's Deceptive Trade Practices Act.  *See id*. at ¶¶ 217–48 (alleging violations of R.I. Gen. Laws § 6-13.1-2).  Thus, the relatedness prong is satisfied.

**B.    Emisar Has Purposefully Availed Itself of the Privilege of Doing Business in Rhode Island**

"A defendant need not have been physically present in the forum state in order to have 'transacted business' there."  *Hannon v. Beard*, 524 F.3d 275, 281 (1st Cir. 2008); *see also Dynamic Concepts, Inc. v. Modern Chain Mfg. Co., Inc*., 610 F. Supp. 285, 289 (D.R.I. 1985) (holding that since "a substantial amount of business is transacted solely by mail and wire communications across state lines," a defendant need not establish a "physical presence within a State in which business is conducted" to be subject to specific personal jurisdiction).  A plaintiff need only show "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *see Baskin-Robbins*, 825 F.3d at 36 ("The purposeful availment inquiry asks whether a defendant has 'deliberately targeted its behavior toward the society or economy of a particular forum such that the forum should have the power to subject the defendant to judgment regarding that behavior.'" (citing *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 555 (1st Cir. 2011))).  But "establishing specific targeting of a forum is not the only means of showing . . . purposeful availment.  In fact, there is jurisdiction if there is

6

'regular flow or regular course of sale' in the forum." *Franks*, 722 F. Supp. 3d at 77–78 (citing *Knox v. MetalForming, Inc.*, 914 F.3d 685, 691 (1st Cir. 2019)).

The First Circuit has recognized that, for purposes of analyzing whether an out-of-state company has purposefully availed itself of the privilege of doing business in the forum state, there is a difference between "the prototypical stream-of-commerce case. . . [that] usually involve[s] entities who cannot necessarily predict or control where downstream their products will land" and cases where "no intervening actor can bring [the defendant's] product somewhere unexpected [because the] service goes only to the customers that [the defendant] has accepted." *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 8 (1st Cir. 2018); *accord Rodriguez-Rivera v. Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 165–66 (1st Cir. 2022) (finding purposeful availment because of company's "deliberate attempts to tap the [forum] market to sell its product and reap the financial benefits" since product went "only to the customers that [the company] accepted."); *Knox*, 914 F.3d at 693 (finding purposeful availment because the company "individually approved" and "direct[ed] where its products [went]"); *CW Downer & Co. v. Bioriginal Food & Science Corp.*, 771 F.3d 59, 66–68 (1st Cir. 2014) (finding purposeful availment over a foreign company that did not "passively put[] an item in the stream of commerce," but rather had a single identified "exclusive" distributor). This is because such cases provide the court with "an objectively clearer picture of [the defendant's] intent to serve the forum" since there is no actual risk that "intervening actors like distributors may take the products to unforeseeable markets." *Plixer Int'l*, 905 F.3d at 8. Rather, such facts show a plus factor "over and above the defendant's mere awareness that its products were entering a given market in the stream of commerce," and solidify that the defendant indeed purposefully availed itself of the privilege of doing business specific to the forum state such

7

that the forum's specific personal jurisdiction could not have been unforeseeable to the defendant. *Chen*, 956 F.3d at 59–60; *Knox*, 914 F.3d at 691–92.

Voluntariness and foreseeability are "the two cornerstones of purposeful availment." *PREP Tours*, 983 F.3d at 19. "Voluntariness requires that the defendant's contacts with the forum state 'proximately result from actions by the defendant himself.'" *Id.* at 20 (quoting *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 28 (1st Cir. 2008)). "[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* (citing *Burger King*, 471 U.S. at 474). While "the mere existence of a contractual relationship between an out-of-state defendant and an in-state plaintiff" is not in itself sufficient to establish purposeful availment, it contributes to elucidating the "rough quid pro quo" relationship that demonstrates that the defendant has purposefully availed itself of the privilege of conducting business in the forum state. *Baskin-Robbins*, 825 F.3d at 36; *PREP Tours*, 983 F.3d at 19. Importantly, Emisar does not deny that it negotiates the pharmacy benefit agreements that impact prescription drug prices and access in Rhode Island. *See* Compl. ¶¶ 1–12 & 25; Emisar Br. at 1.

Here, the exercise of jurisdiction over Emisar is based on Emisar's voluntary, yet unlawful, conduct. Emisar negotiates with prescription drug manufacturers for OptumRx, which in turn contracts with health benefit plans and pharmacies to provide services to Rhode Island consumers and Rhode Island-based health plans (which are consumers of Defendants' services). *See* Compl. ¶¶ 1–12, 24–25, 66. Therefore, Emisar's alleged liability for violating Rhode Island's Deceptive Trade Practices Act results from actions by Emisar itself that are targeted toward the society and economy of Rhode Island. *See Burger King*, 471 U.S. at 473 ("[P]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are

8

subject to regulation and sanctions in the other State for the consequences of their activities." (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950)).  While Emisar attempts to shirk its voluntary involvement in the scheme alleged in the Complaint by arguing that the Complaint fails to differentiate between Emisar's Rhode Island business actions and its nationwide business actions, Emisar Br. at 8–9, it is settled that this Court may exercise personal jurisdiction "where a [service provider] had its [services] distributed across the United States without any attempts to limit the territory to which [the services] would be sold," *Franks*, 722 F. Supp. 3d at 79.  Indeed, that is the very design of Emisar's business model: to consolidate the purchasing power of all OptumRx health plan clients and consequently exert more power over prescription drug manufacturers in rebate agreement negotiations.  Compl. ¶¶ 217–48; *see Rodriguez-Rivera*, 43 F.4th at 165–66 (finding purposeful availment because of company's "deliberate attempts to tap the [forum] market to sell its product and reap the financial benefits" since product went "only to the customers that [the company] accepted.").

Nonetheless, the Complaint specifically takes issue with Emisar's conduct on behalf of Rhode Island plans.  *See* Compl. ¶ 66 (alleging that Emisar "engag[es] in rebate and formulary negotiations with manufacturers . . . [and] collect[s] payments from manufacturers [to] distribute them to the PBM Defendants"); Compl. ¶ 44 (alleging that Emisar "serve[s] as an additional, non-transparent layer in an already opaque system, making it even more difficult for health benefit plans to determine whether they received their fair share of rebates and other manufacturer fees or whether . . . [Emisar is] providing value relative to the administrative fees they charge and to their effectiveness in reducing total drug spend"); Compl. ¶ 104 (alleging that "each of the Defendants [including Emisar] manages prescription drug coverage for tens of millions of consumers, including thousands of Rhode Island residents").

Further, Emisar could reasonably anticipate being haled into court in Rhode Island based upon the conduct alleged in the Complaint, which makes the exercise of specific personal jurisdiction here foreseeable.  Emisar availed itself of the privilege of conducting business in the state by assuming responsibility for rebate agreements that affect Rhode Islanders' healthcare benefits.  Emisar's voluntary actions in negotiating these agreements with drug manufacturers directly impact Rhode Islanders' access to prescription drugs and out-of-pocket costs for those drugs.  It is foreseeable that Emisar could be haled into court for any of these actions if, as alleged, they violate Rhode Island law, because Emisar reaps financial benefits from conducting this business which impacts healthcare in Rhode Island.  *Burger King*, 471 U.S. at 473–74 ("[W]here individuals 'purposefully derive benefit' from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities[.]"); *Northern Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 26 (1st Cir. 2005) (finding foreseeability inquiry met where the nature of defendant's actions "make it foreseeable to [defendant] that he might be held accountable for his [actions]" by the forum state); *Chen*, 956 F.3d at 59 ("[A] defendant corporation's 'regular course of sales in the forum' could make the exercise of jurisdiction foreseeable to the defendant.").

A part of proving that Emisar's actions violated Rhode Island's Deceptive Trade Practices Act is showing that Emisar's actions "cause[d] substantial injury to consumers (or competitors or other businessmen." *See* Compl. ¶ 230 (quoting *Long v. Dell, Inc.*, 93 A.3d 988, 1000 (R.I. 2014)). The State alleges that Emisar's conduct has had injurious effects on Rhode Island consumers by, *inter alia*, forcing them to pay higher-than-necessary drug costs, which depresses wages and damages Rhode Island's economy, *id*. at ¶¶ 3, 244; stifling their ability to choose from a range of biosimilars to expensive formulary drugs, *id.* at ¶¶ 243–44; and obstructing their ability to

determine whether rebates are properly passed through under their healthcare contracts, *id.* at ¶¶ 136–39. Emisar's voluntary conduct, through which it has "deliberately … created 'continuing obligations' between [it]self and residents of" Rhode Island, has had these proximate consequences. *Burger King*, 471 U.S. at 474–75. It was foreseeable to Emisar that its business in Rhode Island would cause this harm, upon which the State's claims are founded.

In line with *Knox*, *Rodriguez-Rivera*, *Plixer*, and *CW Downer & Co.*, this is a case where the facts reflect that Emisar purposefully availed itself of doing business in Rhode Island because Emisar only provided its services to one client: OptumRx. Emisar was aware that its business specifically targeted and affected Rhode Island because of its limited, identifiable client; Emisar did not merely put its services into the national market, not knowing where they would land. Rather, "no intervening actor" could bring Emisar's services somewhere unanticipated, because its services went only to the customer it accepted. *Plixer Int'l*, 905 F.3d at 8 (finding purposeful availment because facts showed the defendant in fact knew its products targeted the forum through its voluntary acts, thus rendering specific personal jurisdiction foreseeable); *Rodriguez-Rivera*, 43 F.4th at 165–66 (same); *Knox*, 914 F.3d at 693 (same); *CW Downer & Co.,* 771 F.3d 66-68 (same). Similarly, the facts here demonstrate that Emisar's presence in Rhode Island's courts is foreseeable because Emisar's limited distribution of its services provides the court with "an objectively clearer picture of [Emisar's] intent to serve the forum, the crux of the purposeful availment inquiry." *Plixer Int'l*, 905 F.3d at 8.

Accordingly, specific personal jurisdiction over Emisar here is not based on "random, fortuitous, or attenuated contacts;" rather, it is based upon Emisar's voluntary actions related to Rhode Island health plans that have a foreseeable effect on individual Rhode Island consumers. *Franks*, 722 F. Supp. 3d at 77.

11

C.    **Exercising Jurisdiction Over Emisar Is Reasonable**

In assessing reasonableness, a court considers "the five so-called 'gestalt' factors," which include: (1) the defendant's burden of appearing in the forum; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. *Rodriguez-Rivera*, 43 F.4th at 166. As a "sliding scale" inquiry, where the plaintiff's showing on relatedness and purposeful availment is strong, the less it need show in terms of reasonableness. *Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994). On the other hand, "an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness." *Id.* Though Emisar briefly addresses the gestalt factors in a footnote, *see* Emisar Br. at 10 n.5, its argument is premised on its position that "it transacts no business whatsoever in Rhode Island"—a position that is belied by the facts alleged in the Complaint. Compl. ¶¶ 24–25, 28, 66, 104.

First, Emisar's burden of appearance is slight, which weighs towards finding specific personal jurisdiction. Emisar is at home in Delaware. Compl. ¶ 24; *see Ticketmaster*, 26 F.3d at 210 ("[M]ost of the cases that have been dismissed on grounds of unreasonableness are cases in which the defendant's center of gravity, be it place of residence or place of business, was located at an appreciable distance from the forum."). These forums are not so far as to render appearance in Rhode Island onerous for Emisar. *Compare, e.g., Dion v. Kiev*, 566 F. Supp. 1387, 1387 (E.D. Pa. 1983) (reasonable when distance is from Pennsylvania to New York); *Nat'l Ass'n of Real Estate Appraisers v. Schaeffer, Bates & Co.*, 1989 WL 267762, at *4 (C.D. Cal. Mar. 23, 1989) (not reasonable when distance is from Rhode Island to California). Nor has Emisar identified a "unique

12

burden" that is posed by appearing in Rhode Island.  *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 114 (1987) ("For this type of burden to affect the analysis, the defendant must show that it is 'special or unusual.'").

Second, the State "has an interest in the matter" where "the alleged harm . . . was directed toward [the plaintiff] in Rhode Island, even though the origin might have been elsewhere." *Madden v. Rittal North America, LLC*, 643 F. Supp. 3d 305, 313 (D.R.I. 2022); *see also Burger King*, 471 U.S. at 472 ("A State generally has a 'manifest interest' in providing its resident with a convenient forum for redressing injuries inflicted by out-of-state actions.").  The most prominent policy implicated here is the ability of Rhode Island to hold Emisar "to account in [Rhode Island] for consequences that arise proximately from [Emisar's unlawful] activities."  *Burger King*, 471 U.S. at 473–74; *Rhode Island Hosp. Trust Nat. Bank v. San Gabriel Hydroelectric Partnership*, 667 F. Supp. 66, 72 (D.R.I. 1987) (finding that Rhode Island "has a direct interest in protecting one of its own [constituents] from any potential wrongdoing on the part of out-of-state businesses"); *Asahi Metal Indus.*, 480 U.S. at 114–15 (suggesting the forum state's interest in protecting its consumers is especially applicable to cases involving "safety standards"); *C.W. Downer & Co.*, 771 F.3d at 70 (A state "has 'significant' interests in providing a convenient forum" for injuries within the state "by out-of-state defendants."); *Ford Motor Co.*, 592 U.S. at 368 (same).

Third, trying the case in Rhode Island will be more convenient for the State, and courts "must accord plaintiff's choice of forum a degree of deference." *Ticketmaster*, 26 F.3d at 211.  The State's choice of forum is especially entitled to deference where, as here, Rhode Island is the most tied to the dispute because it centers on violations of the State's consumer protection statute.  *Id.* Fourth, the interest of the judicial system in the effective administration of justice will be furthered by exercising specific personal jurisdiction over Emisar in this case because the case is more likely

13

to be efficiently resolved in Rhode Island.  And fifth, the common interests of all sovereigns in promoting substantive social policies further supports an exercise of specific personal jurisdiction over Emisar for the State's claims, where they are founded on violations of consumer protection law.  *Rodriguez-Rivera*, 43 F.4th at 166.

For these reasons, the gestalt factors "tip the constitutional balance" in favor of finding specific personal jurisdiction over Emisar for purposes of the State's claims and demonstrate that "substantial justice" would be served by exercising specific personal jurisdiction here. *Ticketmaster*, 26 F.3d at 209.

### D.      In the Alternative, the Court Should Permit the State to Conduct Jurisdictional Discovery

Should the Court determine that the State has not made a *prima facie* showing of this Court's specific personal jurisdiction over Emisar (it should not), the Court should permit the State to conduct limited jurisdictional discovery.  Courts have broad discretion to order jurisdictional discovery, *see U.S. v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 637 (1st Cir. 2001) ("As a general matter, discovery . . . should be freely permitted. . . ."), and "the threshold showing that a plaintiff must present to the district court to merit limited discovery is relatively low." *Blair v. City of Worcester*, 522 F.3d 105, 111 (1st Cir. 2008).  Courts recognize that "a diligent plaintiff who sues an out-of-state corporation and who makes a colorable case for the existence of *in personam* jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." *Sunview Condominium Ass'n v. Flexel Intern., Ltd.*, 116 F.3d 962, 964 (1st Cir. 1997).  So long as the plaintiff's position is not "frivolous," jurisdictional discovery should be permitted.  *Surpitski v. Hughes-Keenan Corp.*, 362 F.2d 254, 255 (1st Cir. 1966).

This Court should grant the State limited jurisdictional discovery to allow further substantiation of the claims of specific personal jurisdiction alleged in the Complaint and discussed

14

in this opposition brief.  The State has made colorable claims that exercising specific personal jurisdiction over Emisar is proper because Emisar has undertaken conduct that has caused effects in Rhode Island.  The State's position, that Emisar undertakes conduct in violation of Rhode Island's Deceptive Trade Practices Act and for that reason is subject to specific personal jurisdiction in this Court for those claims, is not frivolous.  *See id.* at 255 (plaintiff's jurisdictional claims are "frivolous" if they constitute a "fishing expedition").  Accordingly, this Court should exercise its discretion and grant the State limited jurisdictional discovery.

<u>**CONCLUSION**</u>

For the reasons set forth above, this Court should deny Emisar's motion to dismiss and hold that it has specific personal jurisdiction over Emisar for the State's claims.

Dated: October 17, 2025

**RESPECTFULLY SUBMITTED,**

**STATE OF RHODE ISLAND**
**PETER F. NERONHA**
**ATTORNEY GENERAL**

By Its Attorneys,

*/s/ Sarah W. Rice*
Sarah W. Rice
Assistant Attorney General
Dorothea R. Young
Jordan Broadbent
Special Assistant Attorneys General
150 South Main Street
Providence, RI 02903
Tel. (401) 274-4400
srice@riag.ri.gov
dyoung@riag.ri.gov
jbroadbent@riag.ri.gov

*/s/ Robert J. McConnell*
Robert J. McConnell
**MOTLEY RICE LLC**
40 Westminster St., 5th Floor
Providence, RI 02903

15

Tel. (401) 457-7700
Fax. (401) 457-7708
bmcconnell@motleyrice.com

/s/ *Elizabeth Paige Boggs*
Linda Singer
*Admitted Pro Hac Vice*
Elizabeth Paige Boggs
*Admitted Pro Hac Vice*
Devin X. Williams
*Admitted Pro Hac Vice*
**MOTLEY RICE LLC**
401 9th Street, NW, Suite 630
Washington, DC 20004
Tel. (202) 386-9626
Fax. (202) 386-9622
lsinger@motleyrice.com
pboggs@motleyrice.com
dwilliams@motleyrice.com

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 17, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties in this case by operation of the Court's CM/ECF system. Parties may access this filing through the Court's system.

/s/ *Elizabeth Paige Boggs*
Elizabeth Paige Boggs

17