**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STATE OF RHODE ISLAND, by and through PETER F. NERONHA, ATTORNEY GENERAL, <br><br> *Plaintiff,* <br><br> v. <br><br> CAREMARKPCS HEALTH, L.L.C., ZINC HEALTH SERVICES, LLC, EXPRESS SCRIPTS, INC., ASCENT HEALTH SERVICES LLC, OPTUMRX, INC., and EMISAR PHARMA SERVICES, LLC, <br><br> *Defendants.* | CIVIL NO.: 25-cv-00306-MRD-PAS |

**STIPULATED ORDER AND PROTOCOL FOR THE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS**

The Parties hereby submit the following Stipulation and Order Governing the Production of Electronically Stored Information and Hard Copy Documents ("ESI Order"):

**I.    GENERAL.**

A.    The procedures and protocols set forth in this Protocol shall govern the production of electronically stored information ("ESI") and hard copy documents in this Litigation, unless the Parties agree in writing to change them or they are changed by the Court. This ESI Order is intended to aid the Parties by providing a more predictable, cost-effective, and efficient management structure for facilitating the exchange of ESI and hard copy documents. Except as specifically set forth herein, nothing in this ESI Order shall supersede the Parties' obligations and protections under the Federal Rules of Civil Procedure ("Federal Rules"), the Local Civil Rules

1

for the U.S. District Court for the District of Rhode Island ("Local Rules"), and any other applicable orders and rules.

B.      The Parties acknowledge their duty to work together cooperatively throughout the discovery process. The Parties shall promptly meet and confer in good faith on issues regarding ESI as necessary, including issues relating to compliance with this ESI Order, custodians, data sources, and search methodologies (e.g., search terms and other methods of identifying responsive ESI). In the event the Parties cannot reach agreement, disputes may be submitted to the Court or its designee for determination.

C.      By stipulating to this ESI Order and agreeing to produce ESI and Hard Copy Documents, generally or in a particular form or forms, no Party waives any objections to producing any particular document or category of documents on any grounds whatsoever.

D.      If any Producing Party identifies a circumstance where application of this ESI Order is not technologically practicable or possible, or if it cannot comply with any material aspect of this ESI Order, or if compliance would be impossible or unreasonable, the Producing Party will disclose to the Requesting Party the reasons for, and circumstances surrounding, the impracticality or impossibility of compliance with this ESI Order, and the Parties will meet and confer in an effort to reach agreement on an appropriate exception to this ESI Order. In the event the Parties cannot reach agreement, the matter may be submitted to the Court or its designee for determination.

E.      This ESI Order shall apply to all Parties in this Litigation, except where a Party seeks an exception to this ESI Order as described in Section I.D. herein.

F.      All productions in this litigation are subject to any Stipulated Protective Order separately entered by the Court in this litigation.

## II.    DEFINITIONS.

"**Documents**" shall have the same definition as set forth in Federal Rules of Civil Procedure 26 and 34.

"**Document Family**" refers to a collection of related pages or files as maintained in the ordinary course of business but consisting of more than a single stand-alone record. A "parent document" is an electronic file that attaches or embeds at least one other electronic file (a "child document"). A "Document Family" includes, for example, emails with attachments, or MSOffice files embedded within another MSOffice document. For the avoidance of doubt, ESI referenced in ESI only by a hyperlink or other pointer ("hyperlinked files") shall not be construed to be in the same Document Family solely by virtue of the hyperlink reference.

"**Electronically stored information**" or "**ESI**" means, as referenced in the Federal Rules, information that is stored electronically, regardless of the media or whether it is in the original format in which it was created, as opposed to stored in hard copy (i.e., on paper).

"**Extracted text**" means the text extracted from an electronic document, and includes all header, footer, redlines, comments, notes, and document body information when reasonably available.

"**Hard Copy Document**" means a document collected from physical files (paper) and not from electronic sources.

"**Litigation**" means *State of Rhode Island v. CaremarkPCS Health, L.L.C. et al.*, No. 25-cv-00306 (D.R.I.).

"**Load/Unitization file**" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A

3

Load/Unitization file may also contain data relevant to the individual documents, including extracted and user-created Metadata.

"**Media**" means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

"**Metadata**" is used to describe the structural information of a file that contains data about the file, as opposed to describing the content of a file. The Metadata fields to be produced are listed in Exhibit 1.

"**Native**" or "**Native Format**" means and refers to the format of ESI in the application in which it was originally created and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.

"**OCR text**" means text generated through Optical Character Recognition Process of image/bitmap picture representation of the documents.

"**Parties**" means or refers collectively to the named plaintiffs and defendants in this Litigation, as well as any later added plaintiffs and defendants. "Party" shall refer to a plaintiff or defendant, individually.

"**Producing Party**" means or refers to any Party from which production of ESI or Hard Copy Documents are sought.

"**Receiving Party**" means or refers to any Party to which production of ESI or Hard Copy Documents is made.

"**Requesting Party**" means or refers to any Party seeking production of ESI or Hard Copy Documents.

"**Structured Data**" means data that resides in a fixed field within a record or file, or data stored in a structured format, such as databases (e.g., Oracle, SQL, Access, etc.) or data sets, according to specific form and content rules as defined by each field of the database.

### III. PRESERVATION.

To reduce costs and burdens of preservation and to ensure proper documents and ESI are preserved, the Parties agree as follows:

#### A. Deleted Files.

If a Producing Party learns during the search and collection process that responsive ESI or Hard Copy Documents that existed as of the date upon which the duty to preserve ESI arose (1) was lost, destroyed, or is no longer retrievable, and (2) cannot be restored or replaced through additional discovery, the Producing Party shall so advise the Requesting Party, at which point the Requesting Party and Producing Party shall meet and confer regarding the issue.

#### B. Types of ESI that Need Not Be Preserved or Searched.

The Parties agree that there is no need to preserve or search the following categories of ESI, which are deemed for purposes of this section to be not reasonably accessible:

1. random access memory (RAM), temporary files, or other ephemeral data;

2. on-line access data such as temporary Internet files, histories, caches, cookies, etc.;

3. data in metadata fields that are frequently updated automatically, such as last-opened dates;

4. shadowed, damaged, residual, "deleted," "slack," "fragmented," "unallocated," or other data accessible only by use of computer forensics;

5. data stored on photocopiers, scanners, and/or fax machines;

6. data maintained in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup

5

tapes or other media, continuity of operations systems, and data or system mirrors or shadows, if such data are more accessible elsewhere;

7.    operating system files, executable files;

8.    structural files not material to individual file contents that do not contain substantive content (e.g., .CSS, .XSL, .DTD, etc.); and

9.    non-substantive embedded files (e.g., company logos or signature blocks), as long as they are displayed in the parent document.

**C.    Inaccessible Documents.**

The Parties agree that there is no need, at this time, to search ESI from any source a Party has identified to the Requesting Party as not reasonably accessible pursuant to Federal Rule 26(b)(2)(B), although the Parties must take reasonable steps to preserve such ESI if potentially responsive. All Parties reserve the right to request to have this ESI searched if some reason emerges for believing that a particular source contains responsive information. A decision to preserve any ESI shall not be interpreted as an agreement that the preserved material is relevant to the issues in the case or constitutes reasonably accessible ESI that could be subject to review and production. The Parties further agree that there is no need to modify or suspend the procedures used by them in the ordinary course of business to backup data and systems for disaster recovery and similar purposes related to continuity of operations.

**IV.    PRIOR PRODUCTIONS.**

To the extent the Requesting Party has requested production of documents or ESI that can be satisfied by the re-production of documents or ESI that were previously produced by the Producing Party in other litigation or proceedings, the Producing Party, subject to its objections to the request, may, at its election, produce the previously-produced documents or ESI in the same

form in which they originally were produced, even if such form is different from the production specifications in this ESI Order. In these instances, the Producing Party shall either (1) reproduce the documents or ESI using the same Bates numbers used when the documents or ESI were previously produced, or (2) provide an overlay with the corresponding Bates numbers used when previously produced. If such documents or ESI have been previously produced in more than one other proceeding, the Parties shall meet and confer regarding the appropriate Bates numbers to use. If the Producing Party elects to produce previously produced documents, the Parties agree to meet and confer in good faith (1) should a Receiving Party make a tailored good-faith request for the reproduction of documents or ESI in a different format than originally produced, and (2) to resolve any technical issues with any such productions. This provision does not waive the right of a Party to object to any requests for reproduction of documents and ESI from such prior productions.

## V.    SEARCH PROCEDURES FOR ELECTRONIC DOCUMENTS.

The Parties shall participate in an iterative and cooperative approach with respect to the identification of relevant custodians and information sources. The Parties may identify potentially responsive ESI and documents by: identifying and selecting the custodians, databases, and non-custodial sources that are the most likely to possess responsive documents and information and (a) applying agreed-upon search terms to identifiable data repositories and custodial data sources in accordance with the provisions of Section V.A., or (b) identifying documents or ESI that are responsive to the Requesting Party's discovery requests directly, where search terms are not necessary to identify responsive documents or ESI, and/or (c) utilizing Technology Assisted Review as described below in Section V.B. The Parties shall meet and confer in good faith regarding the search methodology and search terms, if any, to be applied, and use of technology

7

assisted review or similar technologies, if any; responsive data sources, including the identities of custodians and custodial, non-custodial, or third-party data sources; any applicable and appropriate timeframes for the collection, review, and production of ESI and documents; and validation processes. The Producing Party will be reasonably transparent regarding the universe of documents subject to targeted collections, culling, or application of search terms. No Party is relieved of its overall discovery obligations through the use of search terms or Technology Assisted Review.

### A.    Use of Search Terms.

If a Producing Party elects to use search terms to identify potentially responsive documents and ESI, it shall identify and propose to the Requesting Party an initial list of search terms, custodians, custodial data sources, and non-custodial data sources that are likely to contain responsive documents and ESI, and the Parties will meet and confer regarding those terms and any additional terms, or other requested changes, proposed by the Requesting Party. That meet and confer shall include, when requested, the exchange of information that includes, where relevant, semantic synonyms, code words, acronyms, abbreviations, nonlanguage alphanumeric associational references to relevant ESI, any hit count reports, and any other information agreed to by the Parties. To the extent the Parties cannot reach agreement on the application of, or procedures for, any search or filtering processes, the Parties may raise such issues for resolution by the Court or its designee.

### B.    Use of Technology Assisted Review.

If a Producing Party elects to use technology assisted review or any other form of machine learning beyond search terms or keywords (collectively, "TAR") for purposes of culling ESI potentially responsive to a Requesting Party's request, it shall disclose that intent to the Requesting

Party, and the Producing Party shall meet and confer with the Requesting Party regarding how such technologies will be implemented, before the Producing Party employs any TAR. The Parties will meet and confer regarding any TAR issues that arise prior to submitting the issue to the Court or its designee for resolution. If the Parties cannot reach resolution, the matter may be submitted to the Court or its designee for resolution. By agreeing to use TAR in this Litigation, the Parties do not acknowledge or concede that they are obligated to use TAR in any other matter, including, without limitation, matters pending in any state or federal courts. Moreover, by agreeing to use TAR in this Litigation, the Parties do not intend to waive any rights or protections pursuant to privacy, confidentiality, attorney-client privilege, work product, and any other privileges, protections, or objections to discovery. The Parties preserve all such rights.

C.      Responsive Documents.

The fact that a document may have been retrieved by application of search terms or TAR does not render it automatically responsive and producible, and a Producing Party may withhold from production such document if non-responsive and/or permissible under the Federal Rules. To the extent any Party identifies responsive ESI or documents outside of search terms or the TAR methodology noted above, all such non-privileged documents shall be produced. Nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing a review to determine if documents captured by search terms are responsive to the Requesting Party's discovery requests. Similarly, nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of documents determined to be responsive. Further, nothing in this ESI Order requires the production of documents captured by search terms or TAR that are not responsive to the Requesting Party's request.

## VI.    PRODUCTION OF HARD COPY AND ESI DOCUMENTS.

### A.    Deduplication.

To reduce the unnecessary costs of reviewing and producing exact duplicate documents, each Party may use reasonable, good-faith efforts to avoid the production of duplicate ESI through the use of global deduplication. Deduplication shall be done on the family level based on MD5 or SHA hash values using industry standard deduplication technology. The Parties agree that an email that includes content in the "BCC" or other blind copy field shall not be treated as a duplicate of any otherwise identical email that does not include content in the "BCC" or other blind copy field.

No Party shall eliminate duplicates of ESI by manual review or some method other than by use of the technical comparison using MD5 or SHA hash values outlined above. Hard Copy Documents shall not be eliminated as duplicates of ESI.

For exact duplicate documents, the Producing Party will produce the Metadata described in Exhibit 1 for the single production copy. If more than one custodian possesses a duplicate, the Producing Party shall identify each custodian who had a copy of the produced document (in the "All Custodians" field as described in Exhibit 1).

If, during the course of its review, the Producing Party identifies a large number of duplicate documents, the Parties may meet and confer regarding a custom deduplication protocol. Except for the removal of extracted logos, no custom deduplication method other than those discussed herein will be implemented before conferring with the Requesting Party.

### B.    Email Threading.

No email may be withheld from production or omitted from a privilege log because it is included in whole or in part in a more inclusive email; provided, however, that the Parties may use

email threading for their own internal review or other internal processes to reduce the volume of entirely duplicative content within email threads.

### C. Production of Hard Copy Documents — Format.

All Hard Copy Documents will be produced as single-page, black-and-white 300 DPI, Group IV* TIFF images or color JPG images with LZW compression, where appropriate, with OCR text provided in document level text files, objective Metadata fields pursuant to Exhibit 1, and load files pursuant to Exhibit 2. In scanning Hard Copy Documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). Document pages which have affixed notes, such as Post-It notes, shall be imaged with and without the note attached.

### D. Production of ESI — Format.

ESI, except that which is redacted, slipsheeted, or produced in Native Format, shall be produced as single-page, black-and-white, 300 DPI, Group IV* TIFF images or color JPG images with LZW compression where appropriate with corresponding extracted full text provided in document level text files, objective metadata fields pursuant to Exhibit 1, and load files pursuant to Exhibit 2. All ESI produced as images shall be imaged, to the extent reasonably possible, with track changes, comments, hidden text, and/or underlying annotations rendered on the image.

Spreadsheets, audio/visual/multimedia, and other files that are not conducive to production in image format shall be produced in Native Format, except where such files are image-redacted or slipsheeted pursuant to the terms of this Protocol. ESI produced in Native Format shall be produced with all Metadata contained in or associated with that file to the extent technologically possible consistent with Exhibit 1. ESI produced in Native Format shall be given a file name consisting of a unique Bates number (e.g., "ABC00000002"). For each Native file produced, the

production will include a single-page placeholder TIFF image stamped with this unique Bates number and/or confidentiality designation and containing the phrase: "PRODUCED IN NATIVE FORMAT" or similar language.

No Party may attach to any pleading or any correspondence addressed to the Court or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding a copy of any produced Native document without ensuring that either the corresponding placeholder slip sheet is attached to the document or the corresponding Bates number and confidentiality legend, if any, appears on the document.

     **E.**     **Appearance and Content.**

Responsive ESI that presents imaging or formatting problems shall be promptly identified, and the Parties may meet and confer in an attempt to resolve the problems. Producing Parties shall make reasonable efforts to address imaging and formatting issues identified by the Requesting Party. The Requesting Party agrees to raise these issues within a reasonable timeframe.

     **F.**     **Color.**

If a Requesting Party finds the black and white version of a document insufficient, the Requesting Party may request that the Producing Party provide a color image. The Producing Party will not unreasonably deny a request to provide a color image. If the Parties cannot come to an agreement regarding whether a document must be produced in color, the good cause standard will govern the dispute. However, the Requesting Party does not have to make a good cause showing when it initially requests the document in color; instead, the Requesting Party may simply identify the document. If a Producing Party converts a document to color image in response to a request from a Receiving Party, the Producing Party shall do so in JPEG, TIFF or such other format as agreed with the Requesting Party.

### G.    Non-English Documents.

When documents are produced that contain languages other than English, in whole or in part, the Producing Party shall produce each such document in the original language or languages in which it was written when collected. The Producing Party has no obligation to create a translation of the documents or any portion thereof. The Parties will meet and confer as necessary concerning procedures for using translations at depositions and at trial. In the event the Parties cannot reach agreement, the matter may be submitted to the Court or its designee for determination.

### H.    System Files.

Each Producing Party will use its best efforts to filter out common system files and application executable files using the national software reference library NIST hash set list.

### I.    Production of Redacted Documents/Information.

Absent further order of the Court or agreement of the Parties, no redactions may be made within any ESI or Hard Copy Document unless the information is subject to the deliberative process, executive privilege, attorney-client or work-product privileges, or unless the redaction is of information identifying members of P&T Committees other than Pharmacy Benefit Manager ("PBM") employees. To the extent that a Producing Party maintains that an otherwise responsive document contains certain highly sensitive information that should be redacted for reasons other than those permitted by this section, the Producing Party and Requesting Party shall meet and confer concerning the proposed treatment of such information; if the Parties cannot reach resolution, the Producing Party may submit the document to the Court or its designee for review in camera and seek an order concerning the appropriate treatment of the disputed information.

Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction, and a

13

metadata field shall indicate that the document contains redactions and the basis for the redaction (e.g., "Redacted—A/C Privilege," "Redacted—AWP," "Redacted—P&T Committee"). Where a responsive document contains both redacted and non-redacted content, the Producing Party shall produce the remainder of the non-redacted portions of the document, Native Excel, or other spreadsheet files that are redacted may be produced in Native or near Native Format by overwriting the data contained in a particular cell, row, column or tab with the word "Redacted," using industry-standard tools, and shall make clear the reason for the redaction (e.g., "Redacted - Privilege), provided that such overwriting does not impact any other, non-redacted cells or information in the spreadsheet (e.g., if a cell redacted for privilege contains a numerical value that is used in a formula by other, non-redacted cells in the spreadsheet). If a redaction does impact non-redacted cells/information, the Parties shall promptly meet and confer to resolve the issue. The Parties acknowledge that redacting the native may alter the metadata of the produced file; however, the metadata produced pursuant to Exhibit 1 will be the metadata extracted from the original native file, other than metadata containing redacted information.

Any other Native files that are redacted may be produced as black-and-white or color (as applicable), single-page TIFF files with OCR text provided in document level text files, with load files pursuant to Exhibit 2, which shall include all information contained in the original file.

**J.    Confidentiality of Produced ESI.**

Documents and ESI shall be produced pursuant to the terms of any Protective Order entered in this Litigation. Any objections to production shall otherwise be made pursuant to the Local Rules, Federal Rules of Civil Procedure, or the Federal Rules of Evidence. If the Producing Party

14

is producing ESI in TIFF format subject to a claim that it is protected from disclosure under the Protective Order, or other order issued in this Litigation, the document shall be stamped electronically on each page in accordance with the applicable Order.

If the Producing Party is producing ESI in Native Format subject to a claim that it is protected from disclosure under any Protective Order, or other order issued in this Litigation, then the designation shall be included in a separate field in the .dat load file, as well as the TIFF placeholder or where not produced with a TIFF placeholder, the storage device (e.g., CD, USB, or hard drive) containing such native ESI data shall be labeled in accordance with the applicable order.

**K.      Other Production Specifications.**

All productions will include these additional specifications:

1.      ESI will be produced with a standard Concordance (*.dat) load file format and an image load file that is in .OPT format. The Concordance (*.dat) load file shall be provided with UTF-8 encoding with the full path and file name to the files produced pursuant to Exhibit 2, and shall include the Metadata fields identified below (Exhibit 1);

2.      Document level .txt files for all Native documents containing extracted full text or OCR text (OCR only if extracted text is not available or if the document has been redacted);

3.      Bates number branding and confidentiality designation (if any) on the face of the image in a location that does not obliterate, conceal, or interfere with any information from the source document;

4.      A TIFF placeholder embossed with the corresponding confidentiality designation and Bates number shall be produced for all ESI produced in Native Format;

5.      Each Bates number will: (i) be unique across the entire document production; (ii) maintain a constant length across the entire production (i.e., ABC00000001-with no space between the prefix and the number, padded to the same number of characters); (iii) contain no special characters; and (iv) be sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production, and the skipped number or set of numbers should be noted with a placeholder;

6.      PowerPoint slides/presentations that are produced in TIFF format will be produced with any notes or comments contained therein. Word-processing documents that are produced in TIFF format will be produced with any track changes or comments visible on the face of the corresponding TIFF images;

7.      Metadata and coding fields shall be produced for a document as set forth in Exhibit 1. If Metadata fields are not produced for the reasons set out in Exhibit 1, the Producing Party shall include the fields in the header row of the .DAT and leave the field blank for the corresponding document(s); and

8.      In the event any document or ESI (or portion thereof) produced is password protected, the Producing Party shall make all reasonable efforts to provide the password needed to access the document or ESI.

9.      Compressed file types (e.g., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in an iterative manner to ensure that an archive within an archive is decompressed into the lowest possible compression resulting in individual files.

10.     Documents with dynamic fields for file names, dates, and times will be processed to show the field code (e.g., "[FILENAME]"), rather than the values for such fields existing at the time the file is processed.

11.     All provided Metadata pertaining to dates and times will be standardized to UTC or other disclosed time zone.

## VII.    FAMILY RELATIONSHIPS OF ESI

### A.     Family Relationships.

For ESI, Document Families must be preserved by assigning sequential Bates numbers to all files within a parent-child group and by providing accurate attachment ranges for those files in the metadata fields required. Attachments to emails or substantive embedded files will not be eliminated from the parent e-mail/document. Rather, parent-child relationships (the association between an attachment and its parent document, or for embeddings, the association between embedded documents and their containers) will be preserved. Substantive embedded documents (e.g., a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records (either in full, redacted, or via privilege slipsheet), and related back to the respective top-level parent document via the Beginning Attachment Bates Number and Ending Attachment Bates Number fields. The Parties agree that fully non-responsive attachments to responsive parent documents need not be produced; however, non-responsive parent documents must be produced if they contain any responsive attachments. When the Parties withhold a fully non-responsive, non-privileged attachment, they shall produce a TIFF slip sheet with a Bates Number in place of the attachment, along with all metadata associated with the document being withheld as specified in Exhibit 1. No extracted text need be provided. The TIFF slip sheet for each withheld attachment shall state "Family Member Withheld as Non-Responsive." The

17

Requesting Party has the right to request the production of any attachment withheld solely on the ground of nonresponsiveness. If the Parties cannot promptly reach an agreement, the Requesting Party may raise the issue with the Court.

Where an electronic document that is part of a family is withheld, and its relationship to the rest of that Document Family is indicated using slipsheets, the Producing Party shall provide one Bates-numbered slipsheet for each withheld document.

If a member of an ESI Document Family that has otherwise been determined to be responsive cannot technically be processed (e.g., unsupported file format, file corruption, inaccessible password-protected document), those technical problems shall be identified and disclosed to the Requesting Party by production of a Bates-labeled slipsheet that states "Technical issue—file cannot be processed." A Requesting Party may thereafter raise with the Producing Party any questions or concerns, and if the Parties cannot promptly reach an agreement, the Requesting Party may raise the issue with the Court.

### B.    Embedded Objects.

The Parties agree that non-substantive embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set (but not a document) and need not be produced as separate documents by a Producing Party (i.e., such embedded objects will be treated as produced within the document itself, rather than as separate documents).

Substantive embedded objects or files, where produced, are to be produced as family groups and such embedded files should be assigned Bates numbers that directly follow the Bates numbers of the documents within which they are embedded. Should a Party believe the volume of substantive embedded objects results in the review being overly burdensome, the Parties shall meet

and confer. The Parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this provision.

**VIII.    DATABASES AND STRUCTURED, AGGREGATED, OR APPLICATION DATA.**

The Parties will meet and confer to address the identification, production, and production format of any responsive data contained in a database or other Structured Data or aggregated data source or otherwise maintained by an application. The Parties will reasonably cooperate in the exchange of information concerning such databases to facilitate discussions on productions and production format, including available data fields/objects and schema. If the Parties cannot reach agreement, the matter will be decided by the Court or its designee.

To the extent a Producing Party is constrained from producing responsive Structured Data because of a third-party license or because software necessary to view the data is hardware-dependent, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format. The Producing Party shall produce exports and reports in a reasonably usable form. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format.

**IX.    PRODUCTION MEDIA.**

Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC compatible interface), via secure FTP site or similar electronic secure file transfer system, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media"). Each piece of Production Media shall include a unique identifying label and cover letter including the following information:

- Name of the Litigation and its case number;

- Name of the Producing Party;

- Date of the production (mm/dd/yyyy);

- Production volume and/or Bates number range; and

- Confidentiality Designation, if any.

The foregoing labeling information shall also be provided in a .txt file at the root folder of the corresponding production deliverable. Any replacement Production Media or documents shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates number range that is being replaced.

Producing Parties may encrypt their Production Media, and if so, shall provide a key to decrypt the Production Media in a separate communication.

**X.    OBJECTIONS TO ESI PRODUCTION.**

If any formatting requirements or other specifications agreed to in this ESI Order are later determined by the Producing Party to be technically infeasible, unduly burdensome, or unreasonably costly, the Party, during the meet-and-confer process, shall: (i) describe the nature of the objection with reasonable particularity; (ii) provide the Requesting Party with the basis for declining to produce such ESI; and (iii) indicate whether the Producing Party is willing to offer an alternative. The Parties shall negotiate in good faith concerning the production of any such ESI. If the Parties are unable to reach agreement, the Parties shall submit any dispute to the Court for resolution.

**XI.    COSTS.**

Unless otherwise ordered, the costs of producing documents and ESI pursuant to this Order shall be borne by each Producing Party. If the Parties cannot reach an agreement on a disputed matter, any Party may submit the disputed matter to the Court for resolution.

**XII.    NO DESIGNATION OF DISCOVERY REQUESTS.**

Productions of Hard Copy Documents and ESI in the form set out in this ESI Order are reasonably usable and need not be organized and labeled to correspond to discovery requests.

**XIII.    E-DISCOVERY LIAISONS.**

The Parties agree that each Party will have an individual knowledgeable about that Party's E-Discovery systems and technologies in attendance at meet-and-confers on discovery-related matters. This individual need not be the same for every meet-and-confer, but the individual attending for each Party will be knowledgeable about the E-Discovery items at issue in the specific meet-and-confer(s) that they attend.

**XIV.    MISCELLANEOUS PROVISIONS.**

The Parties will act in good faith as required by law and use these procedures to identify and reduce the potential for disputes.

The Parties are aware of the importance the Court places on cooperation and commit to continue to consult and cooperate reasonably as discovery proceeds. No Party may seek judicial relief from the Court or its designee unless it first has conferred with the applicable Producing or Requesting Party.

**PURSUANT TO THE PARTIES' STIPULATION, IT IS SO ORDERED.**

Dated:  _____          _____
                                                                     The Honorable Melissa R. DuBose
                                                                     District of Rhode Island

**STIPULATED AND AGREED TO BY THE PARTIES.**

Date: July 9, 2026 _____

21

**STATE OF RHODE ISLAND**
**PETER F. NERONHA**
**ATTORNEY GENERAL**

By Its Attorneys,

/s/ *Dorothea R. Calvano Young*
Sarah W. Rice
Assistant Attorney General
Dorothea R. Calvano Young
Jordan Broadbent
Special Assistant Attorneys General
150 South Main Street
Providence, RI 02903
Tel. (401) 274-4400
srice@riag.ri.gov
dyoung@riag.ri.gov
jbroadbent@riag.ri.gov

/s/ *Elizabeth Paige Boggs*
Linda Singer
*Admitted Pro Hac Vice*
Elizabeth Paige Boggs
*Admitted Pro Hac Vice*
Devin X. Williams
*Admitted Pro Hac Vice*
**MOTLEY RICE LLC**
401 9th Street, NW, Suite 630
Washington, DC 20004
Tel. (202) 386-9626
Fax. (202) 386-9622
lsinger@motleyrice.com
pboggs@motleyrice.com
dwilliams@motleyrice.com

/s/ *Frederick Baker*
Frederick Baker
*Admitted Pro Hac Vice*
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Tel. (843) 216-9186
Fax. (843) 216-9440
fbaker@motleyrice.com

**ASCENT HEALTH SERVICES LLC**
**AND EMISAR PHARMA SERVICES,**
**LLC**

/s/ *Nicole J. Benjamin*
Nicole J. Benjamin (#7540)
John A. Tarantino (#2586)
**ADLER POLLOCK & SHEEHAN P.C.**
100 Westminster Street, 16th Floor
Providence, RI 02903
Tel: 401-274-7200
Fax: 401-751-0604
nbenjamin@apslaw.com
jtarantino@apslaw.com

Jason R. Scherr (*pro hac vice*)
Douglas A. Hastings (*pro hac vice*)
Elise M. Attridge (*pro hac vice*)
Lindsey T. Levy (*pro hac vice*)
**MORGAN LEWIS & BOCKIUS, LLP**
1111 Pennsylvania Ave. NW
Washington, DC 20004
Tel: 202-739-3000
Fax: 202-739-3001
jr.scherr@morganlewis.com
douglas.hastings@morganlewis.com
elise.attridge@morganlewis.com
lindsey.levy@morganlewis.com

*Counsel for Express Scripts, Inc. and*
*Ascent Health Services LLC*

/s/ *Brooks R. Magratten, Esq.*
Brooks R. Magratten, Esq., #3585
**PIERCE ATWOOD LLP**
One Citizens Plaza, 10th Floor
Providence, RI 02903
Tel.: 401-490-3422 Fax: 401-588-5166
bmagratten@PierceAtwood.com

Brian D. Boone (*pro hac vice*)
**ALSTON & BIRD LLP**
Vantage South End
1120 South Tryon Street, Suite 300

22

Charlotte, NC 28203
Tel.: (704) 444-1000 Fax: (704) 444-1111
Brian.Boone@alston.com

Elizabeth Broadway Brown (*pro hac vice*)
Jordan E. Edwards (*pro hac vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Tel.: (404) 881-7000 Fax: (404) 881-7777
Liz.Brown@alston.com
Jordan.Edwards@alston.com

Kelley Connolly Barnaby (*pro hac vice*)
**ALSTON & BIRD LLP**
950 F Street NW
Washington, DC 20004
Tel.: (202) 239-3300 Fax: 202-239-3333
Kelley.Barnaby@alston.com

*Counsel for OptumRx, Inc. and Emisar Pharma Services LLC*

*/s/ Rebecca Briggs*
Rebecca Briggs (#8114)
**HINCKLEY, ALLEN & SNYDER LLP**
100 Westminster Street, Suite 1400
Providence, RI 02903
Tel:  (401) 274-2000
Fax:  (401) 277-9600
rbriggs@hinckleyallen.com

Enu Mainigi (*pro hac vice*)
Craig D. Singer (*pro hac vice*)
R. Kennon Poteat III (*pro hac vice*)
Adam J. Podoll (*pro hac vice*)
Daniel Dockery (*pro hac vice*)
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5000

emainigi@wc.com
csinger@wc.com
kpoteat@wc.com
apodoll@wc.com

23

ddockery@wc.com

*Counsel for CaremarkPCS Health, L.L.C.
and Zinc Health Services, L.L.C.*

**EXHIBIT 1**

**FIELDS and METADATA TO BE PRODUCED**

1.    The load files accompanying scanned Hard Copy Documents will include the following objective coding fields, to the extent applicable:

| Field | Field Description |
|---|---|
| CUSTODIAN (DPF) | The custodian of the document even if de-duplicated prior to production or location of item |
| BEGBATES (DPF) | First Bates identifier of item |
| ENDBATES (DPF) | Last Bates identifier of item |
| BEGATTACH (DPF) | Starting Bates number of a Document Family |
| ENDATTACH (DPF) | Ending Bates number of a Document Family |
| PAGECOUNT (DPF) | Number of pages |
| TEXTLINK (DPF) | Link to text file for the document |

2.    The following metadata fields shall be included in Load files accompanying ESI, to the extent available, and the ESI they are related to is unredacted and not privileged:

1

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| BEGBATES (DPF) | First Bates identifier of item | First Bates identifier of item | First Bates identifier of item |
| ENDBATES (DPF) | Last Bates identifier of item | Last Bates identifier of item | Last Bates identifier of item |
| BEGATTACH (DPF) | Starting Bates number of a Document Family | Starting Bates number of a Document Family | Starting Bates number of a Document Family |

2

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| ENDATTACH (DPF) | Ending Bates number of a Document Family | Ending Bates number of a Document Family | Ending Bates number of a Document Family |
| PAGECOUNT (DPF) | Number of pages | Number of pages | Number of pages |
| ALL CUSTODIANS | The custodian of the document being produced. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. | The custodian of the document being produced. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. | The custodian of the document being produced. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. |
| CONFIDENTIAL | Confidentiality designation, if any; otherwise blank. | Confidentiality designation, if any; otherwise blank. | Confidentiality designation, if any; otherwise blank. |
| AUTHOR | Document author from metadata | | |
| FROM | | Sender of message | Sender of calendar invite |
| TO | | Recipient(s) of message | Recipient(s) of calendar invite |
| CC | | Copied recipient(s) of message | Copied recipient(s) of calendar invite |

3

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| BCC | | Blind copied recipient(s) of message | Blind copied recipient(s) of calendar invite |
| SUBJECT | | Subject of message | Subject of calendar invite |
| SENTDATE | | The sent date of the message in the format MM/DD/YYYY | Date calendar invite sent (if any) |
| SENTTIME | | The sent time of the message in the format HH:mm:ss | Time calendar invite sent (if any) |
| RECEIVEDDATE | | The received date of the message in the format MM/DD/YYYY | The received date of the invite in the format MM/DD/YYYY |
| RECEIVEDTIME | | The received time of the message in the format HH:mm:ss | The received time of the invite in the format HH:mm:ss |
| FILENAME | Contents of this metadata field, or an equivalent | Contents of this metadata field, or an equivalent | Contents of this metadata field, or an equivalent |
| | | | |
| FILEEXTEN | File extension | File extension | File extension |
| FILESIZE | Size of the file in bytes | Size of the file in bytes | Size of the file in bytes |
| HASH | MD5 or SHA1 hash of the document | MD5 or SHA1 hash of the email | MD5 or SHA1 hash of the calendar invite |

4

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| NATIVELINK | Link to native file (if any) | Link to native file (if any) | Link to native file (if any) |
| TEXTLINK | Link to text file for the document | Link to text file for the email | Link to text file for the calendar invite |
| TITLE | Title from a document's properties | | |
| DATECREATED | Date file was created | | |
| TIMECREATED | Time file was created | | |
| DATEMODIFIED | Date file was last modified | | |
| TIMEMODIFIED | Time file was last modified | | |
| TRACKCHANGE | (Y/N) Field for documents with track changes | | |
| FAMILYDATE | Populated for all documents. Document families populated with parent date. MM/DD/YYYY | Populated for all documents. Document families populated with parent date. MM/DD/YYYY | |
| PRODVOL | Production volume number | Production volume number | Production volume number |
| REDACTION TYPE | e.g. P&T , A/C Privileged | e.g. P&T , A/C Privileged | e.g. P&T , A/C Privileged |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| REDACTION | (Y/N) Field for documents with redactions | (Y/N) Field for documents with redactions | (Y/N) Field for documents with redactions |

Such metadata field values will be extracted from the native file and will be produced to the extent available at the time of collection and processing, except that they may be redacted if privileged or if the metadata field values contain information protected by law or subject to an order of this Court. This list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of ESI, that do not exist as part of the original metadata of the document, or that would be burdensome or costly to obtain.

If necessary, the Metadata for text messages, collaboration system messages (e.g., Chatter), social media messages, and other ESI that does not conform to the Metadata listed here, shall be determined by the meet-and-confer as outlined in Paragraph I.D of this ESI Order.

6

## EXHIBIT 2

### REQUESTED LOAD FILE FORMAT FOR ESI

1.   **Delimited Text File**. A delimited text file (.DAT File) containing the fields listed in Exhibit 1 should be provided. There must be one row in this load file for every document in the deliverable, and the file must terminate with a carriage return. The delimiters for the file should be Concordance defaults:

- Comma – ASCII character 20 (¶)

- Quote – ASCII character 254 (þ)

- Newline – ASCII character 174 (®)

2.   **Image Cross-Reference File (.opt).** The Opticon cross-reference file is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image in the database. The format for the file is as follows: ImageID, VolumeLabel, ImageFilePath, DocumentBreak, FolderBreak, BoxBreak, PageCount.

| | |
|---|---|
| ImageID: | The unique designation that Concordance and Opticon use to identify an image. This should be the BegBates Number of the Document. |
| VolumeLabel: | The name of the volume. |
| ImageFilePath: | The full path to the image file. |
| DocumentBreak: | If this field contains the letter "Y," then this is the first page of a Document. If this field is blank, then this page is not the first page of a Document. |
| FolderBreak: | Leave empty. |
| BoxBreak: | Leave empty. |
| PageCount: | Number of pages in the Document. |

1

**3.    Sample Data**

PROD00000001,VOL001,E:\100\ PROD00000001.TIF,Y,,2

PROD00000002, VOL001,E:\100\ PROD00000002.TIF,,,,

PROD00000003, VOL001,E:\100\ PROD00000003.TIF,Y,,,4

PROD00000004, VOL001,E:\100\ PROD00000004.TIF,,,,

PROD00000005, VOL001,E:\100\ PROD00000005.TIF,,,,

PROD00000006, VOL001,E:\100\ PROD00000006.TIF,,,,