**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STATE OF RHODE ISLAND, by and through PETER F. NERONHA, ATTORNEY GENERAL,<br><br>*Plaintiff*,<br><br>v.<br><br>CAREMARKPCS HEALTH, L.L.C., ZINC HEALTH SERVICES, L.L.C., EXPRESS SCRIPTS, INC., ASCENT HEALTH SERVICES LLC, OPTUMRX, INC., and EMISAR PHARMA SERVICES LLC,<br><br>*Defendants.* | Case No.: 1:25-cv-00306-MRD-PAS |

**DEFENDANTS' PARTIAL OPPOSITION TO THE STATE'S MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES**

A defendant facing a demand for various forms of "equitable" remedies is entitled to assert standard "equitable" defenses—a proposition that should require no debate.[1] Yet the State asks this Court to foreclose such defenses before merits discovery has even begun. The State does so notwithstanding its own insistence that it seeks exclusively equitable remedies. And it implies that, in doing so, the Court would cut off discovery into relevant facts, even though the Court just denied Defendants' motion to dismiss, based in large part on the need for factual development about the State's own role in the practices it now challenges as "deceptive" and "unfair."

Rhode Island law is clear that equitable defenses are available against the State. The State concedes as much, suggesting at most that they are "disfavored." But even inasmuch as equitable

[1] The parties agreed to a stipulation (Dkt. 100) narrowing the dispute and therefore this opposition does not address the fault and cost-shifting defenses. *See infra* at 3.

defenses against the State are "disfavored" in certain contexts, they are routinely recognized as viable when the State acts in affirmative ways to endorse or encourage defendants' conduct. That is exactly what Defendants contend here—that the State actively incentivized PBMs to engage in the rebating practices that it now challenges—and what Defendants would develop further through discovery.

The Court should therefore apply the extraordinarily high standard for motions to strike and deny the State's premature effort to narrow Defendants' defenses.

**BACKGROUND**

On May 27, 2025, Rhode Island sued CaremarkPCS Health, L.L.C., Express Scripts, Inc., and OptumRx, Inc. (the "PBM Defendants") and group purchasing organizations, Zinc Health Services, L.L.C., Ascent Health Services, LLC, and Emisar Pharma Services LLC (the "GPO Defendants"), for alleged violations of the Rhode Island Deceptive Trade Practices Act ("DTPA"), including alleged deceptive and unfair acts and practices related to prescription drug pricing. Defendants filed a Motion to Dismiss on several grounds. Dkt. 40. In particular, Defendants argued that the State's claims were barred by the DTPA's safe harbor provision because Defendants' actions are subject to monitoring and regulation by numerous government agencies and protected by both Rhode Island and federal law. *Id.* at 6. Defendants also argued that the rebate negotiations the State challenges are not "unfair" because, among other things, the State itself negotiates for rebates from drug manufacturers like the very rebates it challenges here. *Id.* at 24–25.

On March 27, 2026, this Court granted in part and denied in part Defendants' Motion to Dismiss. Dkt. 68. In its Order, the Court repeatedly emphasized that this case is in "the early stage of litigation," and that the Court would "be in a better position to assess" many of Defendants' arguments "with the benefit of a developed record." *Id.* at 21. The Court further stated it would

be "premature" to decide many issues, such as the State's oversight of and participation in the challenged conduct, "without more information." *Id.* at 9–10.

On July 15, 2026, the PBM Defendants and Zinc filed their respective Answers and Affirmative Defenses to the State's Complaint (Dkts. 84–86), admitting and denying various of the State's allegations and raising defenses.[2] Three weeks later, before the parties had taken any discovery, the State moved to strike approximately ten defenses from each Answer. Dkt. 91 (Motion to Strike). In its motion, the State grouped the defenses it seeks to strike into two categories: "fault and cost-shifting defenses" and "equitable defenses." Mot. at 4.

**A. Fault and Cost-Shifting Defenses**

The State argues that the first set of defenses—including comparative negligence, contributive fault, and failure to mitigate damages—are legal defenses to damages. The State moved to strike this category of defenses on the basis that it had disclaimed any request for money damages on behalf of the State or any State instrumentality. *Id*. at 3–4. Instead, the State asserted it was seeking equitable relief only in the form of injunctive relief, restitution, civil penalties, and disgorgement and clarified that it is proceeding in a "public enforcement" capacity. *Id.* at 4.

The parties conferred after the State filed its motion, and the State stipulated that it was not seeking any legal relief in this action. In particular, the State stipulated that "Plaintiff does not seek any damages as part of this Action." Dkt. 100 at 1. In light of the State's stipulation that it is pursuing only equitable relief, Defendants withdrew via stipulation the first category of challenged defenses, while making clear that the facts underlying those defenses—the ways in which the challenged practices benefited the State, health plans, and patients, and were approved

[2] GPO Defendants Ascent and Emisar both filed 12(b)(2) motions to dismiss for lack of personal jurisdiction and are currently in the process of jurisdictional discovery. *See* Dkts. 29, 33, and 69. Accordingly, they have not filed answers in this action.

or conducted by the State, health plans, and patients—remained relevant to various remaining defenses. Accordingly, this Opposition does not address those defenses.

**B. Equitable Defenses**

Having argued the first category of defenses should be stricken because it seeks purely equitable relief, the State nevertheless argued that the second category—Defendants' "equitable defenses"—should be stricken as categorically unavailable under Rhode Island law. Mot. at 5. This category of defenses includes standard equitable defenses such as equitable estoppel and laches, as well as defenses that cannot be characterized as "equitable" like *res judicata* and collateral estoppel. *Id.* at 4.[3]

The parties also conferred regarding this category of defenses but could not reach a resolution. The State continues to maintain its position that Defendants' equitable defenses should be stricken notwithstanding the fact that the State undisputedly seeks equitable remedies, and notwithstanding that the State's cited case law recognizes that equitable defenses are potentially available against the State.

## ARGUMENT

"Motions to strike defenses are disfavored and should be granted only when it is 'beyond cavil that the defendant[] could not prevail on them.'" *Honeywell Consumer Prods., Inc. v. Windmere Corp.*, 993 F. Supp. 22, 24 (D. Mass. 1998) (quoting *Coolidge v. Judith Gap Lumber*

[3] *See* Mot. at 4 (moving to strike CVS Caremark Defendants' Defense Nos. 3 ("equitable doctrines of estoppel, laches, unclean hands, in pari delicto, and/or waiver"), 17 ("unjust enrichment"), 26 (consent), 31 ("res judicata" and "collateral estoppel"); "OptumRx's Defense Nos. 2 ("laches"), 3 ("equitable doctrines of estoppel, unclean hands, in pari delicto, waiver, release, and acquiescence"), 17 (unjust enrichment), 20 (consent), 27 ("res judicata" and "collateral estoppel")" and Express Scripts's Defense Nos. 5 ("estoppel"), 6 ("laches"), 7 ("unclean hands"), 8 ("in pari delicto"), 21 ("doctrines of actual or presumed knowledge" and "doctrine of acquiescence"), 22 (consent), 28 ("unjust enrichment")).

*Co.*, 808 F. Supp. 889, 893 (D. Me. 1992)). Motions to strike defenses therefore are "often denied even when technically correct and well-founded." *Mastrocchio v. Unnamed Supervisor Special Invest. Unit*, 152 F.R.D. 439, 441 (D.R.I. 1993) (cleaned up). The State's motion is neither.

Defendants are "not obliged at this stage to prove the plausibility of their affirmative defenses." *J & J Sports Prods., Inc. v. Vernancio*, 2018 WL 5786163, at *2 (D.R.I. Nov. 5, 2018); *see also Owen v. Am. Shipyard Co.*, 2016 WL 1465348, at *2–3 (D.R.I. Apr. 14, 2016) (declining to apply the *Twombly* and *Iqbal* pleading standard to affirmative defenses). Instead, the State, as the moving party, bears the burden of proving "beyond cavil that [the] affirmative defenses are insufficient and must be stricken." *J & J Sports*, 2018 WL 5786163, at *2. Crucially, "courts are reluctant to grant motions to strike affirmative defenses since they require a premature evaluation of a defense's merits, before the necessary factual background is developed." *inMusic Brands, Inc. v. Roland Corp.*, 2022 WL 2128611, at *1 (D.R.I. June 14, 2022) (citation omitted), *report and recommendation adopted*, 2022 WL 16736222 (D.R.I. Nov. 7, 2022). Courts therefore particularly should be "reluctant to grant this severe remedy" of striking defenses "if the court is in doubt as to whether the challenged matter may raise an issue of fact or law." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 182 F.R.D. 386, 398 (D.R.I. 1998) (internal quotation marks omitted).

To prevail on a motion to strike an affirmative defense, the State must establish that "(1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; *and* (3) the plaintiff would be prejudiced by the inclusion of the defense." *inMusic Brands, Inc.*, 2022 WL 2128611, at *1 (emphasis added) (cleaned up). As these elements are conjunctive, the failure to satisfy any element is fatal to its

motion. *See id.*; *accord Markham Concepts, Inc. v. Hasbro, Inc.*, 2017 WL 4685074, at *3 (D.R.I. Oct. 17, 2017).

The Court should deny the State's motion because it fails to establish all three elements as to Defendants' equitable defenses. *First*, the State cannot show that there is no question of fact as to Defendants' affirmative defenses. Discovery has not even commenced, and Defendants will prove through discovery the facts underlying their defenses. *Second*, the State cannot demonstrate any prejudice, nor has it even attempted to make that showing. And *third*, the State cannot show there is no question of law which might allow the defenses to succeed because, as the State's own authorities make clear, equitable defenses can and do apply in public enforcement actions seeking equitable relief.

Separate from Defendants' equitable defenses, the State also moved to strike Defendants' *res judicata* defenses. The Court should deny the State's motion as to those defenses because the State failed to make any argument as to them, and the State cites no authority suggesting it is not subject to ordinary *res judicata* principles.

## I. The State Has Not Shown that No Question of Fact Might Allow Defendants' Defenses to Succeed.

The State's motion, filed a mere three weeks after Defendants filed their Answers and before any merits discovery has taken place, does not attempt to show there is "no question of fact" that could allow Defendants' equitable defenses to succeed. *See J & J Sports*, 2018 WL 5786163, at *1. Nor could the State plausibly make such a showing given that there has been no factual development in the case. The State's own authorities make clear that motions to strike should be denied when "discovery is only now being undertaken," because "[c]ourts should be reluctant at this stage to determine disputed questions of law and fact absent a showing of prejudice to the movant." *Mastrocchio*, 152 F.R.D. at 441. The same restraint is required here.

Unsurprisingly, the Rhode Island cases upon which the State relies for its assertion that government plaintiffs are not subject to equitable defenses all ruled on those after development of a full factual record. *See O'Reilly v. Town of Glocester*, 621 A.2d 697, 704 (R.I. 1993) (appeal from full trial); *Cigarrilha v. City of Providence*, 64 A.3d 1208, 1212–14 (R.I. 2013) (appeal from "nonjury trial"); *Romano v. Ret. Bd. of Emps.' Ret. Sys. of R.I.*, 767 A.2d 35, 36, 45 (R.I. 2001) (appeal from administrative proceeding); *Contardo v. Monahan*, 2004 WL 3190200, at *6–7 (R.I. Super. Ct. Dec. 13, 2004) (same). Those authorities hardly support striking Defendants' affirmative defenses at the earliest stage in litigation, before merits discovery has even begun. As this Court explained in denying Defendants' motion to dismiss, the issues in this case should be resolved "after discovery" and after "*everyone* involved has the benefit of transparency." Dkt. 68 at 7 (emphasis added). The same reasoning applies fully here.

Nor could the State show that Defendants will not be able to prove the facts undergirding their equitable defenses. Through discovery, Defendants will show that the State participated in, benefitted from, and actively monitored the challenged conduct. In particular, Defendants will show that the State itself engages in the same rebate negotiations that it challenges in this lawsuit, and that the State's health plans therefore benefit from the precise conduct the State claims is unlawful. Dkt. 40 at 7–8, 24–26; Dkt. 55 at 5–6, 22–23. Defendants will further show that the State actively monitors and regulates Defendants' provision of PBM and pharmacy services throughout Rhode Island. Dkt. 40 at 11–12; Dkt. 55 at 5–7. Defendants will therefore show that by actively promulgating and maintaining a regulatory system that authorized Defendants' conduct, and by itself engaging in the precise negotiating conduct it now challenges, the State has induced Defendants to continue providing those services and believing their services were lawful.

These facts will support Defendants' equitable defenses. For example, to establish equitable estoppel, Defendants need only show "an affirmative representation or equivalent conduct" directed to Defendants "for the purpose of inducing the other to act or fail to act in reliance thereon," which caused Defendants to act or refrain from acting. *Eddy v. Pascoag Fire Dist.*, 266 A.3d 747, 751 (R.I. 2022) (citation omitted). Here, the State itself engaged in rebate negotiations, benefitted from pharmaceutical rebates, and actively monitored the conduct it now challenges, thereby encouraging Defendants to continue to negotiate drug rebates in the way the State now challenges. Similarly, the doctrine of unclean hands will bar a claim where "the plaintiff's improper conduct is the source, or part of the source, of his equitable claim." *Martellini v. Little Angels Day Care, Inc.*, 847 A.2d 838, 842 (R.I. 2004) (citation omitted). The State's own conduct with respect to negotiating rebates is at least a "part of the source," *id.*, of its claim that rebate negotiations increased drug prices, *see* Compl. ¶¶ 8, 10, 131, 136. *See also, e.g.*, *Sheehan v. Richardson*, 315 B.R. 226, 239–40 (D.R.I. 2004) (applying Rhode Island law) ("The *in pari delicto* doctrine is that a plaintiff, who has participated in the wrongdoing, may not recover damages resulting from the wrongdoing."), *aff'd*, 185 F. App'x 11 (1st Cir. 2006) (per curiam); *In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 189 (S.D.N.Y. 2014) (*in pari delicto* doctrine "prohibits one party from suing another where the plaintiff was 'an active, voluntary participant in the unlawful activity that is the subject of the suit'" (quoting *Pinter v. Dahl*, 486 U.S. 622, 636 (1988))).

So, too, laches may be invoked "when unexplained and inexcusable delay have the effect of visiting prejudice on the other party." *Hyszko v. Barbour*, 448 A.2d 723, 727 (R.I. 1982). The State's decade-plus delay in bringing this suit is unexplained and inexcusable, particularly because

the State itself was engaging in and overseeing the same negotiating conduct during that time (while benefitting from pharmaceutical rebate negotiations all the while).

## II. The State Has Not Shown Prejudice.

The State also has not shown it would be prejudiced if Defendants' defenses were not stricken. Indeed, the word "prejudice" does not appear even once in the State's brief. This failure alone warrants denial of the State's motion. *See Ross-Simons*, 182 F.R.D. at 399 (denying a motion to strike when a movant "failed to even allege prejudice to its position" because "[s]ome showing of prejudice is required and [movant had] entirely failed to make that showing").

The State could not seriously contend it is prejudiced by the supposed "burden" of undertaking discovery into Defendants' equitable defenses. *See* Mot. 7. The ordinary burdens of discovery are not cognizable prejudice for purposes of a motion to strike. *See J & J Sports*, 2018 WL 5786163, at *2 (rejecting as "baseless" the argument that inclusion of a defense prejudices the plaintiff by "forcing it to 'litigat[e] irrelevant issues'" where the defense raises issues integral to the case) (cleaned up). If such a complaint sufficed to show prejudice, this element would be satisfied in every case.

In all events, discovery into Defendants' equitable defenses will pose no undue burden on the State because Defendants will be entitled to take discovery of the same facts "regardless of whether or not these issues are raised as affirmative defenses." *United States v. Kennebec Scrap Iron, Inc.*, 2016 WL 6651302, at *3 (D. Me. Nov. 10, 2016). As explained in Defendants' motion to dismiss, the fact that health plans, including the health plans the State itself operates, engage in and benefit from the negotiating practices the State challenges fatally undermines the assertion that the challenged conduct is "unfair," or that any alleged misrepresentations could be material to any consumer. Dkt. 40 at 20–22, 24–26, 37–39; Dkt. 55 at 5–6, 22–24. Similarly, Defendants will take discovery into the State's own oversight and monitoring of the challenged PBM and

pharmacy practices in support of their safe-harbor statutory defense (which the State has not moved to strike). *See, e.g.*, Dkt. 40 at 7–8; Dkt. 55 at 6–7, 13.

To the contrary, invalidating Defendants' affirmative defenses at this early stage, before any merits discovery has taken place and any factual record has been developed, would prejudice *Defendants*, not the State. As explained, Defendants agreed to withdraw their legal-damages defenses in light of the State's stipulation that it is seeking only equitable relief and civil penalties. It is wholly contradictory for the State to limit its monetary demand to equity to avoid legal defenses, while simultaneously taking the position that Defendants are precluded from asserting equitable defenses.

## III. The State Has Not Shown that No Question of Law Might Allow Defendants' Defenses to Succeed.

The State also has not carried its burden to establish that Defendants' equitable defenses present "no question of law." The State must show "that any questions of law are clear and not in dispute." *Mastrocchio*, 152 F.R.D. at 441. Accordingly, "ruling on a motion to strike is not the proper occasion for the Court to make a determination concerning a disputed area of the law." *Koch v. I-Flow Corp.*, 715 F. Supp. 2d 297, 305 (D.R.I. 2010); *see, e.g.*, 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1381 (3d ed. 2026) ("[F]ederal courts are very reluctant to determine disputed or substantial issues of law on a motion to strike[.]") (compiling cases).

The State argues that "equitable doctrines do not apply against the State where, as here, it is prosecuting a public enforcement action under the DTPA." Mot. at 4. But the State does not cite a single case refusing to apply an equitable defense to a DTPA enforcement action. And the Rhode Island Supreme Court routinely has held that equitable doctrines like estoppel "may be applied to a governmental authority as well as a private party when appropriate circumstances and

principles of equity so require." *Greenwich Bay Yacht Basin Assocs. v. Brown*, 537 A.2d 988, 991 (R.I. 1988). Thus, estoppel may be applied against a public agency if there is "some positive action" by its agents that "induced the action of the adverse party." *Ferrelli v. Dep't of Emp. Sec.*, 261 A.2d 906, 909 (R.I. 1970); *see also Schiavulli v. Sch. Comm. of N. Providence*, 334 A.2d 416, 418–20 (R.I. 1975); *Bartko v. SEC*, 845 F.3d 1217, 1227 (D.C. Cir. 2017) (recognizing "the unclean hands doctrine may apply" against the government).

The State implicitly concedes it is not categorically immune from equitable defenses later in its brief, asserting that such defenses are "disfavor[ed]" when asserted "in response to a government plaintiff pursuing claims in the public interest." Mot. at 5. But again, the fact that the State purports to sue on behalf of the "public interest" is not a categorical bar to equitable defenses; instead, the Court is simply required to "be mindful of the public interest involved," and weigh the asserted public interest against "any possible injury suffered by [Defendants]" in applying them. *See Lerner v. Gill*, 463 A.2d 1352, 1363 (R.I. 1983). The State has not attempted to show that the purported public interest would categorically outweigh any other interests in the ultimate equitable weighing, nor could it plausibly do so given the bare and undeveloped factual record.

The State's cited authorities do not help it. *Romano* explicitly acknowledged that "[t]here have been and will continue to be many situations . . . in which the doctrine of estoppel can be applied against governmental entities." 767 A.2d at 42 (citations omitted). *O'Reilly* held only that laches "generally" do not apply to government enforcement actions, not that the government is categorically immune from that defense. 621 A.2d at 703. *Cigarrilha* simply upheld, on deferential appellate review, the trial court's decision not to apply laches given the facts of that case. 64 A.3d at 1213–14. *Long v. Dell, Inc.*, did not even involve a government-enforcement action—the court there granted a motion to strike because no claims had been asserted against the

moving party. *See* 93 A.3d 988, 1006 (R.I. 2014). And *City of New York v. FedEx Ground Package System, Inc.*, unequivocally stated that "no case endorses wholesale 'the sweeping proposition that there is no set of facts pursuant to which an equitable defense might be asserted against a governmental entity.'" 314 F.R.D. 348, 357 (S.D.N.Y. 2016).[4]

With no caselaw to support it, the State argues (Mot. at 6) that the text of the DTPA forecloses Defendants' equitable defenses. The State points to R.I. Gen. Laws § 6-13.1-8, which provides that "[a]ny person who violates the provisions of this chapter shall forfeit and pay to the state a civil penalty." The State's argument fails many times over. For one thing, as the text makes clear, the provision upon which the State relies applies only to a "civil penalty," *id.*, not the other forms of equitable relief the State seeks, such as injunctive relief, restitution, and disgorgement. Nothing in that statute bars equitable defenses, nor do the statutory provisions under which the State presumably seeks equitable relief, sections 6-13.1-5(a) and (c). On the contrary, those provisions expressly invoke equitable considerations by authorizing the Attorney General to bring an action "to restrain by temporary or permanent injunction" unlawful conduct and to "seek any other relief that may be appropriate," *id.* § 6-13.1-5(a), and to "make any additional orders or judgments that may be necessary to restore any person in interest" any moneys obtained through unlawful means, *id.* § 6-13.1-5(c). And when statutes authorize equitable relief, courts presume that ordinary equitable considerations apply. *See, e.g.*, *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) ("Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in

---

[4] The State's other out-of-jurisdiction cases also do not support its position because they were resolved at summary judgment, after discovery. *See* Dkt. 92, *Washington v. McKesson Corp.*, No. 19-2-06975-9 SEA, slip op. at 1 (Wash. Super. Ct., King Cnty., Aug. 18, 2021); *United States v. Philip Morris Inc.*, 300 F. Supp. 2d 61, 65 (D.D.C. 2004).

equity, the full scope of that jurisdiction is to be recognized and applied." (citation omitted)). The State cannot invoke the Court's equitable powers while simultaneously avoiding applicable equitable defenses.

Even as to the civil-penalty provision, the State's argument is meritless. The State does not cite a single case supporting its novel interpretation of the DTPA, and courts routinely apply equitable defenses to claims for civil penalties. *See, e.g.*, *City of Auburn v. Desgrosseilliers*, 578 A.2d 712, 713 (Me. 1990) (affirming trial court decision that a city was barred by equitable estoppel from seeking civil penalties). Rhode Island courts, moreover, have allowed parties to assert equitable defenses, even where the plain language of the statute would not contemplate them. *See, e.g.*, *Raso v. Wall*, 884 A.2d 391, 395–96 (R.I. 2005) (statute allowing party to bring challenge "at any time" did not preclude laches defense).

For these reasons, the State is wrong that equitable defenses will not apply. At the very least, Defendants' asserted defenses present disputed issues of law that preclude striking them at this early stage. *See, e.g.*, *Koch*, 715 F. Supp. 2d at 305; *Town of North Kingstown v. Pellegrino*, 1995 WL 941419, at *3 (R.I. Super. Ct. Mar. 31, 1995) (reserving for trial ruling on equitable affirmative defense). In its motion to dismiss ruling, this Court ruled it was premature to determine whether the State's claim was barred because "state and federal governments engage in, and contract for" the same rebates the State now challenges. Dkt. 68 at 24–25. The same logic applies equally here.

## IV. The State's Motion to Strike Defendants' *Res Judicata* Defense Is Waived and Meritless.

The State also has moved to strike Defendants' *res judicata* defenses. But the State does not raise *any* argument as to these defenses, nor does it cite any authority even suggesting that the State is not subject to ordinary *res judicata* principles. The argument is therefore barred by "the

maxim that any issue not raised in a party's opening brief is forfeited." *United States v. Reyes-Santiago*, 804 F.3d 453, 459 (1st Cir. 2015). Even were the argument not waived, *res judicata* defenses unquestionably apply against the government. *See Wilkinson v. State Crime Lab'y Comm'n*, 788 A.2d 1129, 1141 (R.I. 2002); *Foster-Glocester Reg'l Sch. Comm. v. Bd. of Rev.*, 854 A.2d 1008, 1014 (R.I. 2004); *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 169 (1984). The State cites no contrary authority.

## CONCLUSION

For these reasons, the Court should deny the State's Motion to Strike Defendants' Affirmative Defenses.[5]

Dated: September 23, 2026

*/s/ Rebecca Briggs*
Rebecca Briggs (#8114)
**HINCKLEY, ALLEN & SNYDER LLP**
100 Westminster Street, Suite 1400
Providence, RI 02903
Tel: (401) 274-2000
Fax: (401) 277-9600
rbriggs@hinckleyallen.com

Enu Mainigi*
Craig D. Singer*
R. Kennon Poteat III*
Adam J. Podoll*
Daniel Dockery*
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5000
emainigi@wc.com
csinger@wc.com
kpoteat@wc.com

[5] Should the Court strike any defense, Defendants respectfully request that it do so without prejudice and with leave to replead once discovery has clarified the relevant facts.

apodoll@wc.com
ddockery@wc.com
(*admitted *pro hac vice*)

*Counsel for CaremarkPCS Health, L.L.C. and Zinc Health Services, L.L.C.*

*<u>/s/ Nicole J. Benjamin</u>*

Nicole J. Benjamin (#7540)
John A. Tarantino (#2586)
ADLER POLLOCK & SHEEHAN P.C.
100 Westminster Street, 16th Floor
Providence, RI 02903
Tel: 401-274-7200
Fax: 401-751-0604
nbenjamin@apslaw.com
jtarantino@apslaw.com

Jason R. Scherr (*pro hac vice*)
Douglas A. Hastings (*pro hac vice*)
Elise M. Attridge (*pro hac vice*)
MORGAN LEWIS & BOCKIUS, LLP
1111 Pennsylvania Ave. NW
Washington, DC 20004
Tel: 202-739-3000
Fax: 202-739-3001
jr.scherr@morganlewis.com
douglas.hastings@morganlewis.com
elise.attridge@morganlewis.com

*Counsel for Express Scripts, Inc.*

*<u>/s/ Brooks R. Magratten, Esq.</u>*

Brooks R. Magratten, Esq., #3585
Pierce Atwood LLP
One Citizens Plaza, 10th Floor
Providence, RI 02903
Tel.: 401-490-3422
Fax: 401-588-5166
bmagratten@PierceAtwood.com

Brian D. Boone (*pro hac vice*)
**ALSTON & BIRD LLP**
Vantage South End

1120 South Tryon Street, Suite 300
Charlotte, NC 28203
Tel.: (704) 444-1000
Fax: (704) 444-1111
Brian.Boone@alston.com

Elizabeth Broadway Brown (*pro hac vice*)
Jordan E. Edwards (*pro hac vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Tel.: (404) 881-7000
Fax: (404) 881-7777
Liz.Brown@alston.com
Jordan.Edwards@alston.com

*Counsel for OptumRx, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 23, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties in this case by operation of the Court's CM/ECF system. Parties may access this filing through the Court's system.

*/s/ Rebecca Briggs*
Rebecca Briggs